Filed 1/31/25  P. v. Ortega CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B334072 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA343972) |
| v. | |
| CESAR ORTEGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Marc A. Kohm, Deputy Attorneys General for Plaintiff and Respondent.

Cesar Ortega appeals the trial court's order denying his petition for vacatur of his convictions of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1) and attempted murder (§§ 187, subd. (a) & 664; count 2) and resentencing pursuant to section 1172.6. The trial court denied Ortega's petition because he failed to make a prima facie showing that he was eligible for relief. We affirm the trial court's order.

## PROCEDURAL HISTORY

In 2009, Ortega was charged with first degree murder, willful, deliberate, and premeditated attempted murder, and shooting at an occupied motor vehicle. As to all three counts, it was alleged that a principal discharged a firearm, causing great bodily injury or death, and that the crimes were gang-related. Ortega's codefendant, Eric Raphael Ceballos, was tried jointly before a separate jury that received separate jury instructions.

Ortega's jury was instructed on principals to a crime (CALJIC No. 3.00); direct aiding and abetting (CALJIC No. 3.01); murder (CALJIC No. 8.10); malice aforethought (CALJIC No. 8.11); willful, deliberate, premeditated murder (CALJIC No. 8.20); unpremeditated murder in the second degree (CALJIC No. 8.30); attempted murder (CALJIC No. 8.66); the kill zone theory of concurrent intent (CALJIC No. 8.66.1); and willful, deliberate, premeditated attempted murder (CALJIC No. 8.67).

The jury was not instructed regarding felony murder or the natural and probable consequences theory of murder.

The jury found Ortega guilty of first degree murder, attempted murder, and shooting at an occupied motor vehicle,

_____

[1] All further statutory references are to the Penal Code.

and found the associated firearm and gang allegations true. It found not true the allegation that the attempted murder was willful, deliberate, and premeditated. The trial court sentenced Ortega to nine years plus 75 years to life in state prison.

In 2023, Ortega petitioned for vacatur of his murder and attempted murder convictions and resentencing under section 1172.6, which the People opposed. Appointed counsel filed a reply on Ortega's behalf. Following a hearing held pursuant to section 1172.6, subdivision (c), the trial court denied the petition because the record of conviction showed that the jury was not instructed on the natural and probable consequences doctrine or on the felony murder rule. The trial court found that Ortega was not convicted under any theory of imputed liability, but rather as a principal or direct perpetrator of the crimes.

## DISCUSSION

### A. *Section 1172.6*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95 [(now § 1172.6)], which provides a procedure for convicted murderers who could not be convicted under the law as

amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)

Effective January 1, 2022, Senate Bill No. 775 amended former section 1170.95. (Stats. 2021, ch. 551, § 1). As a result of these amendments, current section 1172.6 provides that "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1172.6, subd. (a).) If a petitioner makes a prima facie showing of eligibility under section 1172.6, the trial court must issue an order to show cause and hold an evidentiary hearing. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) A petitioner is ineligible for relief as a matter of law if the record of conviction shows that he or she was not convicted under any theory of liability affected by Senate Bill 1437's amendments to the law of murder. (*People v. Curiel* (2023) 15 Cal.5th 433, 450 (*Curiel*); *People v. Mancilla* (2021) 67 Cal.App.5th 854, 866–867.)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

**B.** *Analysis*

On appeal, Ortega contends that the trial court's order must be reversed because the record of conviction does not preclude the possibility that he was convicted of murder or attempted murder under a theory that is no longer valid. Ortega

4

concedes that the jury was not instructed on the natural and probable consequences doctrine or on felony murder, but asserts that the jury could have nonetheless convicted him under an invalid imputed malice theory because (1) the prosecutor argued imputed malice in closing statements and (2) the instructions permitted the jury to find that Ortega acted with premeditation and deliberation based on his codefendant's mental state. Ortega further contends that the jury's other findings do not preclude his eligibility under section 1172.6.[2] Ortega asserts that these alleged errors violated his constitutional right to due process.

---

[2] With respect to the attempted murder conviction, Ortega acknowledges that the courts that have addressed the issue have held that section 1172.6 limits eligibility to those convicted under the natural and probable consequences doctrine. Ortega nevertheless argues the Legislature intended for persons convicted of attempted murder under another theory of imputed malice to be eligible for relief. We agree with our sister Courts of Appeal that the plain language of section 1172.6, subdivision (a) limits relief to those convicted of attempted murder under the natural and probable consequences doctrine: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts. . . ." (italics added). (See *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865; *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) When the language of a statute is unambiguous, we need look no further to interpret its meaning. (See *People v. Cody* (2023) 92 Cal.App.5th 87, 101 [" 'We begin as always with the statute's actual words,

5

We reject Ortega's arguments.  First, Ortega takes the prosecutor's closing remarks out of context and mischaracterizes them.  The prosecutor's comments accurately reflected the law relating to direct perpetrator and direct aider and abettor theories of liability for murder and attempted murder that remain valid.  Second, even assuming the trial court's instructions on premeditation and deliberation permitted the jury to find that Ortega acted with premeditation and deliberation based solely on his codefendant's mental state, the instructions did not impact the jury's separate finding that Ortega acted with malice based on evidence of Ortega's own mental state.  Finally, in Ortega's case it is unnecessary to consider the jury's other findings to determine whether he was convicted under a valid theory of liability.  The jury was properly instructed on liability for murder and attempted murder as a direct perpetrator and as a direct aider and abettor; the jury necessarily based its verdicts on those valid theories.  The trial court did not err; Ortega's right to due process is not implicated.

## 1.      The Prosecutor's Closing Arguments

Ortega first objects to the prosecutor's explanation of principals to a crime and aiding and abetting.

_____

the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs" ' "].)  Regardless, as we discuss below, in this case there was no other theory of implied malice under which the jury could have convicted Ortega of attempted murder.

6

"The scope of criminal liability is defined by statute: 'All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed.' (§ 31.)" (*Curiel, supra,* 15 Cal.5th at p. 466.)

"[T]o establish liability for murder under the theory of direct aiding and abetting, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' [Citation.] In addition . . . an aider and abettor may be liable for murder under a theory of implied malice where the aider and abettor aids in the commission of a life-endangering act, with ' "knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life." ' [Citation.] 'Thus, proof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea'—which here includes knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus— conduct by the aider and abettor that in fact assists the achievement of the crime.' [Citation.]" (*Curiel, supra,* 15 Cal.5th at pp. 466–467.)

Ortega objects to the prosecutor's statement that: "[T]he law doesn't like gangs, criminal organizations, whether they're

7

white collar or street gangs or traditional gangs that we all watch on TV as crimes. [¶] Law does not like when multiple people get together, the chances of success and violence increase. And so the law is going to hold everybody responsible." This statement was made in the context of defining principals to a crime. The prosecutor explained that both direct perpetrators and aiders and abettors are principals to a crime with equal criminal liability because the Legislature has determined that criminals are more effective and more dangerous when they operate in groups. The prosecutor's statement was consistent with the law relating to principals as articulated in section 31.

Ortega also quotes, as an example of a theory proposed to impute malice to him, a hypothetical robbery the prosecutor used to describe aiding and abetting: "Robbery is taking somebody's property by force or fear. Point a gun, tell them 'Give me your money.' That's a robbery, if you point a gun at someone. What about the driver, is he accountable for the robbery? He's just a getaway driver. He didn't do any force or fear. He's not scaring anybody. He's just waiting for me. [¶] Of course the law is going to hold him equally accountable. How about the person that scouted out that is not even there on the day the robbery occurs? Are we going to hold them accountable? Absolutely. And that's this concept of aiding and abetting."

Ortega omits that the prosecutor's comments were made in the course of explaining the level of liability assigned to people involved in a crime who aid and abet but who do not personally commit all of the specific acts that constitute the crime, such as someone who scouts out a location to rob or who acts as a getaway driver in the robbery hypothetical. Immediately after the remarks Ortega quotes the prosecutor stated: "But in order

8

to aid and abet, you have to know what's going to happen. And you have to share that same intent. So if you are going to a liquor store, and your friend says 'Just stop here. I'm going to run in and get something,' and he comes out running with a bag of money and a gun, you had no idea he had the gun, of course you're not guilty. . . . If your plan was going on to act as the driver, are you guilty of robbery? Absolutely.' "

Taken in context it is clear that the prosecutor accurately described direct aiding and abetting: the aider and abettor has to understand that the perpetrator intended to commit a robbery, share the intent to commit that robbery, and act to facilitate the robbery. Someone who is unaware that the perpetrator intends to rob and unwittingly facilitates the robbery cannot be held liable.

Finally, Ortega objects to the prosecutor's explanation of the firearm use allegations, which he claims permitted the jury to find him guilty of murder and attempted murder even if he did not discharge a firearm. This is also a mischaracterization of the prosecutor's remarks. The prosecutor described the firearm use allegations and explained that if the jury found that the crimes were gang-related, it could find true that a principal used a firearm in commission of the crimes even if Ortega did not personally use a firearm. This is an accurate statement of the law under section 12022.53, subdivisions (d) and (e)(1), which provide that firearm enhancements under section 12022.53 apply to a principal in the offense if that principal violated the gang enhancement statute and *any* principal in the offense "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to a person other than an accomplice" (§ 12022.53, subd. (d)). In addition to being an

accurate statement, the prosecutor's comments related solely to the firearm use enhancements and not to liability for murder.

In sum, nothing in the prosecutor's statements urged the jury to find Ortega guilty of murder based on imputed malice.

## 2. The Premeditation and Deliberation Instruction

The trial court instructed the jury pursuant to CALJIC No. 8.20 that: "To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] [she] decides to and does kill." Ortega argues that the instruction permitted the jury to find him guilty of murder based on imputed malice. We reject the argument.

With the exception of felony murder, which is not implicated here, "in order to be convicted of murder, a principal in the crime shall act with malice aforethought." (§ 188, subd. (a)(3).) Premeditation and deliberation is a distinct concept that sets the *degree* of liability for murder after it has been determined that a murder has been committed. (§ 189, subd. (a) [all murder committed with premeditation and deliberation is murder in the first degree].) Ortega's jury was specifically instructed under CALJIC No. 8.30 that it could find him guilty of second degree murder if it found that the killing was not premeditated. Thus, even assuming that CALJIC No. 8.20 could be interpreted to permit the jury to find that Ortega did act willfully, deliberately, and with premeditation based on his

10

codefendant's mental state, it could not be interpreted to permit the jury to find Ortega guilty of murder based on imputed malice.

It is undisputed that Ortega's jury was properly instructed that murder requires the perpetrator to act with malice aforethought under CALJIC No. 8.10. It is also undisputed that the jury was properly instructed under CALJIC No. 3.01 that if Ortega was an aider and abettor he must both know of and share the perpetrator's intent—i.e., Ortega must have personally acted with malice. Accordingly, the jury necessarily found that Ortega was guilty of murder under a valid theory based on his own mental state.

### 3. <u>Other Jury Findings</u>

Ortega cites *Curiel*, *supra*, 15 Cal.5th 433, *People v. Whitson* (2022) 79 Cal.App.5th 22, and *People v. Offley* (2020) 48 Cal.App.5th 588, to argue that the jury's findings in his case are insufficient to refute his eligibility for resentencing under section 1172.6. All three cases are inapposite. In each of those cases, the jury was instructed under the natural and probable consequences doctrine and the court held that other findings the jury made were insufficient to preclude the possibility that the defendant was convicted under that invalid theory—i.e., the prosecution could not establish as a matter of law that the jury necessarily found all of the elements to support a valid theory of murder liability. (*Curiel*, at p. 468 [jury's true finding on gang murder special circumstance allegation requiring it to find defendant intended to kill did not establish other mens rea requirements for valid direct aider and abettor liability]; *People v. Whitson*, at pp. 31–33 [modified conspiracy to murder instruction and

11

premeditation and deliberation instruction did not require jury to find defendant intended to kill]; *Offley, supra*, at p. 598 [jury's true finding of personal firearm use under section 12022.53, subdivision (d), did not require it to find defendant intended to kill or was aware of the danger to life his act posed].) In the instant case, the trial court did not instruct on the natural and probable consequences doctrine, the felony murder theory, or any other theory of murder by which malice could be imputed to Ortega. Rather, the jury was properly instructed on the required mens rea and actus reus for both direct perpetrators and direct aiders and abettors to establish liability for murder and attempted murder. In contrast to *Curiel*, *Whitson*, and *Offley*, here there was no need to look to other jury findings to determine whether the jury necessarily decided all required elements. The jury's murder and attempted murder verdicts necessarily encompassed all of the elements to support those verdicts under those valid theories of liability. (See *Offley*, at p. 599 [observing that if jury had not been instructed on natural and probable consequences doctrine it could not have convicted on invalid basis and petition would have been summarily denied].)

12

## DISPOSITION

We affirm the trial court's order denying Ortega's petition for resentencing pursuant to section 1172.6.

NOT TO BE PUBLISHED.

MOOR, J.

WE CONCUR:

HOFFSTADT, P. J.

BAKER, J.

13